**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LM INSURANCE CORP.**, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 2372 |
| | ) | |
| v. | ) | |
| | ) | **Judge Nordberg** |
| **ACEO, INC., et al.**, | ) | **Magistrate Judge Cole** |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LM Insurance Co. ("LM"), has sued defendant, ACEO, Inc. ("ACEO"), and others, including Messrs. Hombs and Jatho, over what LM alleges are fraudulent misrepresentations the defendants made in ACEO's application for insurance.[1] The policy in question covered workers' compensation claims and to determine the risk involved-and the corresponding premium-LM had to ascertain ACEO's full payroll exposure. In brief, LM claims that ACEO misrepresented what type of business it was (saying it was a temporary staffing company rather than an employee leasing company), what its total payroll exposure was, what companies it was affiliated with, and whether there were any outstanding workers' compensation claims. As a result of these alleged misrepresentations, LM

---

[1]Mr. Hombs and Mr. Jatho have recently been preliminarily enjoined in a suit charging them with: various claims of breach of contract in connection with their insurance business, intentional misrepresentation, concealment, negligent misrepresentation, violation of California Bus. & Prof.Code § 17200 et seq., violation of 15 U.S.C. § 1125; and with civil RICO, 18 U.S.C. § 1962(c), (d). Plaintiff's claims arose out of alleged improper sales of insurance policies by defendants to third parties purporting to bind plaintiff. *Arch Insurance. Co. v. Allegiant Professional Business Services, Inc.*, 2011 WL 1583953, 1 (C.D.Cal. 2011).

claims the premium was significantly underestimated by perhaps millions of dollars. Moreover, because one of ACEO's affiliated companies had an outstanding premium debt, ACEO wasn't even eligible for coverage.

On September 1, 2011, I granted the Plaintiff's Motion to Compel. [#202, 211]. What necessitated the motion was but the most recent in a long series of unapologetic failures by the defendants and their lawyers to abide by their obligations to participate fully and fairly in discovery. Those failures raise an additional element of concern since one of the defendants' counsel, Andrew L. Jones, is appearing in this case *pro hac vice*. The history of the case and illustrative examples of the unacceptable conduct by the defendants and their lawyers may be found in: *LM Ins. Corp. v. ACEO, Inc.*, 2011 WL 2937300, 2 (N.D.Ill.2011); *LM Ins. Corp. v. ACEO, Inc.*, 2010 WL 893097, 1 (N.D.Ill.2010); *LM Ins. Corp. v. ACEO, Inc.*, 2010 WL 1655206, 2 (N.D.Ill.2010)("All parties in litigation have an obligation to participate fairly in discovery. Alliance's response to my order of March 10th is indefensible and makes a mockery out of these obligations."); *LM Insurance. Corp. v. ACEO, Inc.*, 2010 WL 1655206 (N.D.Ill. 2010).[2]

The motion to compel that was heard on September 1 involved the defendants' failure to have

---

[2] Recently, during the deposition by the plaintiff of an important witness, Mr. O'Connor, one of the defendants' lawyers, left the room with the witness in the midst of a question and consulted with her privately for almost a half hour. But,"[t]he most disturbing aspect of O'Connor's interruption during a critical point in the questioning of Ms. Finke is what occurred after the deposition resumed. Ms. Finke had been prepared to name the person whom she at least believed may have been involved in the impropriety that was the subject of the questioning. Following Mr. O'Connor's almost half-hour conference with Ms. Finke, her testimony underwent a radical change. That it did, certainly appears to be attributable to Mr. O'Connor's efforts. What Justice Frankfurter said in *Avery v. Georgia,* 345 U.S. 559, 564 (1953)(Frankfurter, J., concurring) seems to apply perfectly here: 'The mind of justice, not merely its eyes, would have to be blind to attribute such an occurrence to mere fortuity.' [other citations omitted]." *LM Ins. Corp.*, 2011 WL 2937300, 2.

It was later revealed that Mr. Jones participated by phone in this clearly improper and successful effort to coach the witness.

turned over very significant documents, which they claimed did not exist. Or at least, that they could not be found. The documents were thereafter obtained from a former employee and proved to be singularly unfavorable to the defendants. At the September 1 hearing, it was brought to the court's attention that the defendants' lawyers had never asked individuals to search their own computers or files for the documents and that they had never instructed employees to maintain documents following the initiation of litigation. After hearing argument on the motion -- Mr. Jones participated by phone, as he has been allowed to do in every instance save one -- I granted the motion and instructed the plaintiff to file an appropriate fee petition. *See* #211. The parties had been repeatedly advised that discovery disputes would be decided against the backdrop of *Rickels v. City of South Bend, Indiana*, 33 F.3d 785, 786-87 (7th Cir. 1994): "'The great operative principle of Rule 37(a)(4) is that the loser pays.' Charles Alan Wright & Arthur R. Miller, 8 *Federal Practice and Procedure* § 2288 at 787 (1970). Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." (Parenthesis in original). [*See* ## 38, 167, 174, 208].

On September 2nd, the day after the hearing on the plaintiff's motion to compel, Mr. Jones, acting as though the events of September 1 had never occurred, sent counsel for the plaintiff an email, which stated that defendants had prepared a "draft Declaration" stating that there was no need to ask individual employees to produce documents because emails were stored on a "central server." Mr. Jones threatened that if the draft declaration was not sufficient to resolve the issues in plaintiff's motion, then Mr. Jones would be filing a "motion for sanctions." In response, counsel for the plaintiff, on September 6, wrote to Jones:

3

> In your email you are asking me to negotiate regarding a Motion which has already been granted by Judge Cole. Weeks ago (see our letter of August 11th) we asked to you to provide an affidavit addressing the issues in the Motion to Compel, but same was never provided – and the Court has now granted our Motion. We are all bound by the Court's Order regarding this matter. Lastly, regarding the draft Declaration itself, same does not address the fundamental issues in our Motion: why is it that relevant emails were not produced? and why is it that Mr. Jatho and Mr. Hombs both denied (under oath) having knowledge of fraudulent workers' compensation certificates?

On September 9, Jones responded with another threat to seek sanctions if counsel for the plaintiff persisted in seeking fees. The e-mail concluded with this distasteful and heavy-handed threat:

> ... if you want my help to avoid legal malpractice and to go after Beazley/Lloyd's then back off and settle with Hombs and Jatho. Email me or call me on my cell phone (214-883-6024) today, or next week will be the beginning of the end for you for this case, and probably end your representation.

After this less than subtle approach was rebuffed, came this bit of fustian from Mr. Jones: "Your gross misinterpretations of the spoken and written word have damaged my clients. I will seek to recover those damages from you and your client. As to settlement, my clients hereby completely withdraw all offers."

In due course, a fee petition for $2047.50 was filed. By any standard, the amount of time spent and the fees charged were eminently reasonable. If anything, the fees were cheap. Mr. Jones did not challenge either the reasonableness of the fees or the hours claimed to have been spent. Instead, he filed a vitriolic response, attacking the plaintiff's counsel and, audaciously, asking that fees be awarded in the *defendants*' favor "because *plaintiff* is abusing the discovery process." {Response, ¶3)(Emphasis supplied) [# 212]. The plaintiff has accurately described Jones as having "acted in a bullying and unprofessional manner" and in "a manner which ignores what this Court has

4

advised, what this Court has cautioned and, not least, what this Court has Ordered."

Not only is the conduct of Mr. Jones improper, it is also baseless as a matter of fact. At the hearing on September 1, the defendants contested the motion to compel by arguing that their employees had simply "misunderstood the question" when they testified that they were never asked to produce emails/documents. "[C]hang[ing] positions as nimbly as if dancing a quadrille," *Orloff v. Willoughby*, 345 U.S. 83, 87 (1953), Mr. Jones' new position on behalf of his client is that there was never any need to ask any employee to look for "any documents or emails" on their computers or in their files since all documents were maintained on a central server. (*See* Defendants' Response, 3; Ex. B, ¶3).

The argument is based upon an affidavit from Roy Hombs, a defendant in the instant case and whose non-produced emails are the subject of the present controversy. He alleges that he is the former CFO of ACEO, Inc. and that the critical emails involving him and defendant Jatho were not found on the "central server," despite a supposedly "thorough search" of the server. (Response at unnumbered page 2, ¶5, Ex. B). Hombs claims that there was no need to ask any ACEO employee to review or produce "any documents or emails" since everything was stored on a central server. (Ex. B, ¶3). I do not credit this conclusory statement, and it most certainly does not justify the apparent failure of Mr. O'Connor and Mr. Jones to have instructed the defendants as to how to search for and gather documents required in discovery.[3] Nor does Hombs attempt to explain how the documents, which involved "fraudulent certificates of insurance," were overlooked or how, if they were only located on the server, Ms. Wren produced them. In short, Mr. Hombs' abbreviated and conclusory

---

[3] Hombs does not say that his lawyers told him to conduct the kind of search for documents that is routine in cases like this. Either his lawyers did not tell him – which is a failure on their part attributable to their client for Rule 37 purposes – or they did tell him and he chose to ignore those instructions. In either event, sanctions are proper.

5

rendition of events is implausible and thus, unconvincing. *Cf. Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)(implausible testimony need not be credited); *United States v. Boatner,* 478 F.2d 737, 742 (2nd Cir.1973); *Pinpoint, Inc. v. Amazon.Com, Inc.,* 2004 WL 2792012, *2 (N.D.Ill .2004) (Posner, J.).

Ms. Wren's affidavit, which is attached as Exhibit C to the plaintiff's reply memorandum [#214] states that she was never asked to produce those emails or any other documents by Jatho or Hombs. As was discussed at the hearing on September 1, had the defendants asked their employees (including Ms. Wren) to produce documents, then the emails relating to the fraudulent certificates of insurance would have been produced in discovery - and they would have been produced before Plaintiff took the deposition of Mr. Jatho, Mr. Hombs and Mr. Jerrid Woodhurst. It is simply untenable and unacceptable for the defendants to maintain the argument that they were under no obligation to obtain relevant and responsive discovery documents from their employees.

The defendants' assault on counsel for the plaintiff, in addition to ignoring my ruling on the motion and my order to the plaintiff to file a fee petition, belatedly argues that the plaintiff had no right to file the motion in the first place since there had not been compliance with Local Rule 37.2. As Judge Posner said in another context, this and the other arguments advanced by the defendants "border[] on the preposterous...."*Continental Corp. v. Aetna Cas. & Sur. Co.,* 892 F.2d 540, 545, 892 F.2d 540 (7th Cir.1989). First, the argument was not advanced at the September 1 hearing, and thus is waived. Second, I had the discretion to waive compliance with that rule, as explained in *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.,* 2007 WL 2736681, 1 (N.D.Ill. 2007).

As the plaintiff's Reply brief convincingly demonstrates, the motion was only filed after the plaintiff's attempts to resolve the issues through cooperative endeavors were frustrated by the

6

defendants' lawyers. Hence, the defendants themselves are responsible for any noncompliance with the local rule, and thus they cannot be heard to complain of the consequences of their own acts: "'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect "this is your own act, and therefore you are not damnified. . . .' Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." *R.H. Stearns Co. v. United States*, 291 U.S. 54, 61-62 (1934). *See also Rowe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *United States v. Goodwin*, 449 F.3d 766, 772 (7th Cir. 2006).

Finally, the defendants' argument that Plaintiff's Petition for Fees and Confirmation of Relief Requested was "erroneously filed" (Response at 3) ignores the fact that the initial motion to compel was granted and that the motion for attorneys' fees was in response to a court order. By definition, it could not have been erroneously filed, and the defendants' response is a thinly veiled, unpersuasive, conclusory attempt to reconsider the court's September 1 ruling. The plaintiff is quite right in saying that the defendants' insistence that they have done no wrong and that the plaintiff's allegations of fraud "are so ridiculous that they merit no response," does not in the slightest, "diminish the Defendants' obligations to produce relevant and responsive discovery documents - in a complete and timely fashion - as required under the Federal Rules of Civil Procedure."

## CONCLUSION

Judge Shadur has attributed "the decline in the quality of legal life" to the "sharp increase in the number and proportion of hard-ball litigators" – those "obnoxious people...who make it a point

7

not to be accommodating" and who are always "intransigent" regardless of the circumstances. Milton I. Shadur, *Hardball Litigators*, 20 LITIGATION 21 (1993). For the late Judge Will, one of the most respected district judges in the history of the Nation, "[p]art of the answer is more judicial involvement. We should no longer be willing just to sit up there and, when somebody commits a foul, call foul and give the other side two free throws. Judges need almost to treat it personally." Jeffrey Cole and Rob Shapiro, *An Interview With Judge Hubert L. Will*, 20 LITIGATION 26, 29 (1993).

The behavior of Mr. Jones in this case calls into question whether his permission to appear *pro hac vice* should be rescinded. His conduct is not consistent with that expected of members of the bar of this court  Were the decision mine, I would give very serious consideration to rescinding Mr. Jones' permission to participate further in this case. But that decision is a matter for the plaintiff to take up with the district judge. However, I do have the authority to consider a further award of fees for the time spent in preparation of plaintiff's reply brief. If the plaintiff chooses, he may make a further motion, supported by a memorandum of law, for fees to be awarded personally against Mr. Jones pursuant to 28 U.S.C. §1927. The motion and memorandum must be filed within 14 days. Mr. Jones shall have 14 days to respond and the plaintiff shall have 7 days to reply.

The plaintiff's Petition for Fees [#209] is granted in part and denied in part without prejudice. The defendants' Motion for Sanctions [#212] is denied. The defendants shall pay *immediately* the sum of $2,047.50 to plaintiff's counsel. Additionally, the relief requested in Paragraph 10 of the motion is also granted, and the defendants are ordered to produce all emails and other electronic data responsive to plaintiff's prior production requests and to provide an affidavit of compliance that comprehensively sets forth by a person with knowledge exactly what steps have been taken to comply

with those requests. That must be done in 14 days.

The motion is also granted to the extent it seeks to have defendants, Jatho and Hombs, and employee Woodhurst redeposed Those depositions shall take place in Chicago and must be completed within the next 30 days. The defendants shall bear the costs of those depositions. The subject of the depositions will be the issues set forth in Paragraph 11 of the motion. The court will not tolerate the kind of misconduct that has occurred before in this case or that is discussed in cases such as *Redwood v. Dobson*, 476 F.3d 462, 468 (7th Cir. 2007) and *Flowers v. Owens*, 274 F.R.D. 218, 222, n.6 (N.D.Ill.2011).

However, the plaintiff's request for non-monetary relief in Paragraph 12 is denied but without prejudice. Quite apart from the question of whether I have the authority under the referral from Judge Nordberg to grant the requested relief, the argument is skeletal and perfunctory and supported by no cases. As my standing orders make clear, unsupported motions will not be considered.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 10/24/11

9